IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| HARTFORD FIRE INSURANCE COMPANY, *et al.*, | ) ) ) CASE NO. 5:18cv2366 |
| Plaintiffs, | ) ) |
| v. | ) ) MAGISTRATE JUDGE ) KATHLEEN B. BURKE |
| HRH DOOR CORP., *f.n.a.* WAYNE-DALTON CORP., | ) ) ) |
| Defendant. | ) **MEMORANDUM OPINION & ORDER** ) |

Defendant HRH Door Corp., which formerly did business as Wayne-Dalton Corp. (hereinafter, "Wayne-Dalton"),[1] manufactures garage doors and related products. It was hired by general contractors/developers as a subcontractor in housing development construction in California. Plaintiffs Hartford Fire Insurance Company and Twin City Fire Insurance Company (collectively, "Hartford") issued commercial general liability insurance policies to Wayne-Dalton from 2000-2003; the contractors/developers were additional insureds on those policies. Travelers' Insurance Company ("Travelers") issued similar policies to Wayne-Dalton from 2003-2007. Years later, the California homeowners sued the contractors/developers for construction defects, and the contractors/developers tendered the defense of those lawsuits to Hartford and Travelers as insureds under the policies. Travelers defended the contractors/developers in the California lawsuits, but Hartford did not. Travelers subsequently sued Hartford for contribution towards the more than $600,000 it accrued in defense costs to defend the California lawsuits. Hartford settled that lawsuit and paid Travelers $245,000.

---

[1] Both Hartford Fire Insurance Company and Twin City Fire Insurance Company issued policies to Wayne-Dalton. During the relevant time period, HRH Door Corp. was named Wayne-Dalton Corp. In their briefs, the parties refer to the plaintiffs collectively as "Hartford" and defendant as "Wayne-Dalton." The Court adopts the parties' monikers.

1

Hartford, in turn, sought reimbursement from Wayne-Dalton for the $245,000 it paid Travelers. Wayne-Dalton declined to pay Hartford.

Thereafter, Hartford filed this lawsuit alleging breach of contract of the insurance policy and seeking reimbursement from Wayne-Dalton for the $245,000 it paid to settle with Travelers, in addition to $9,239 it claims it is owed for other losses unrelated to its settlement with Travelers. It has filed a Motion for Summary Judgment (hereinafter, "Motion"), arguing that the express language of the insurance policy entitles it to reimbursement from Wayne-Dalton for the amount it paid to settle with Travelers. Because the Hartford policies do not create an obligation on the part of Wayne-Dalton to reimburse Hartford for the amount it paid to settle with Travelers, Hartford's Motion to recover that sum is denied, and Wayne-Dalton is entitled to an entry of judgment on that claim. Hartford's Motion is also denied with respect to its claim that Wayne-Dalton owes it $9,239 for other losses, because a genuine issue of material fact exists regarding that claim.

## I. Background[2]

At all relevant times, Wayne-Dalton, an Ohio corporation, manufactured and sold garage doors, garage door openers, and related products. Doc. 1, p. 2, ¶6. Hartford, a Connecticut insurance company, issued a Commercial General Liability Insurance policy (CGL) to Wayne-Dalton annually for three years, spanning June 1, 2000 through June 1, 2003. Doc. 30-3, pp. 2-64. Each year a Deductible Liability Insurance (DLI) endorsement issued and set a $500,000 deductible per occurrence. Doc. 1-2. The CGL and DLI policies for each year have the same

---

[2] There are no disputed material facts in this case. There are a few disputed immaterial facts that do not affect the outcome of this case. For convenience, and to provide context, the Court recites Hartford's version of the facts.

effect for purposes of this lawsuit and will hereinafter be referred to simply as "CGL" and "DLI."[3]

Travelers Insurance Company ("Travelers") issued similar commercial general liability policies to Wayne-Dalton covering four annual periods from June 1, 2003 to June 1, 2007.[4] Doc. 30, p. 6.

During the time period within which Wayne-Dalton was covered by the Hartford and Travelers policies, it was engaged as a subcontractor by general contractors and/or developers of residential housing developments in California. Doc. 30, p. 6; Doc. 34, p. 2. Between 2011 and 2013, various California homeowners sued the general contractors/developers of several of the residential housing developments in which Wayne-Dalton had been engaged as a subcontractor, asserting construction defect claims. The cases were brought in California state court and collectively sought millions of dollars in damages. Doc. 30, p. 6.

Although neither party expressly says so, they appear to agree that the general contractors/developers were considered an insured party covered by the Hartford and Travelers policies issued to Wayne-Dalton. Doc. 30, p. 7; Doc. 34, p. 4; Doc. 30-3, p. 16 (CGL). The Sixth Circuit recently described how this aspect of a CGL normally works:

> A contractor hires a subcontractor to perform some work. Pursuant to the subcontract, the subcontractor maintains a CGL policy that, in addition to covering the subcontractor, covers the contractor as an additional insured. The idea is that if a third party gets hurt because of the subcontractor's work, and that third party sues the contractor, the subcontractor's insurer will take care of everything. But contractors already have CGL policies of their own which cover them in the event of such an accident. So to avoid overlapping coverage, a contractor's insurer will include a provision in its policy saying

---

[3] Hartford submitted only the June 2000-June 2001 CGL with its Motion. Doc. 30-3. It filed the DLIs from all three years with its Complaint. Doc. 1-2. The first two DLIs are similar and the third DLI adds language that no party relies on to support its case. In other words, the parties do not appear to dispute that the CGL submitted by Hartford is identical, in relevant part, to the other two CGL policies; nor do the parties argue that the third DLI is materially different from the first two DLIs. Accordingly, the Court cites to the CGL filed as an exhibit to Hartford's Motion (Doc. 30-3) and the 2000-2001 DLI (Doc. 1-2, pp. 2-3).

[4] Neither party provides the Travelers' policies. Hartford states that its polices and the Travelers' policies were "similar" to each other and Wayne-Dalton does not dispute that assertion.

> that if the contractor is covered as an additional insured in a subcontractor's policy, the contractor's policy is "excess." This is called an "other insurance" provision. Usually, it operates such that the contractor will first rely on its coverage as an additional insured (the contractor's "other insurance"), then turn to its own insurer.

*Commerce & Indus. Ins. Co. v. Century Surety Co.*, -- Fed.App'x --, 2020 WL 2095822, at *1 (6th Cir. April 30, 2020).

As insureds under the policies issued to Wayne-Dalton, the general contractors/developers in the California lawsuits tendered the defense of those lawsuits to Hartford and Travelers. Doc. 30, p. 7. Hartford "either reserved its rights or declined to participate in the defense of the developers and general contractors" in the California lawsuits. Doc. 30, p. 7. But Travelers participated in the defense of the lawsuits and purportedly accrued $630,398.23 in defense costs. Travelers then sued Hartford, seeking contribution. Doc. 30-4. Hartford settled that lawsuit, paying Travelers $245,000 for its share of defense costs. Doc. 31-1 (settlement agreement). Hartford, in turn, sought reimbursement from Wayne-Dalton pursuant to the DLI, which provides for a $500,000 deductible per occurrence. Doc. 1, p. 3, ¶10. Wayne-Dalton refused to pay so Hartford brought this lawsuit against Wayne-Dalton, alleging breach of contract and seeking reimbursement of the $245,000. Doc. 1, pp. 3-4.[5] It also alleges that Wayne-Dalton owes it an additional $9,239 in losses pursuant to the policy. Doc. 1, pp. 3-4; Doc. 32, p. 5.

## II. Legal Standard

Rule 56 of the Federal Rules of Civil Procedure provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. The movant "bears the initial responsibility of informing the district court of the basis for its motion,

---

[5] In its Complaint, Hartford seeks $252,685.33 and $1,554.25. In its Motion, it seeks $245,000 and $9,239, respectively. Doc. 30, p. 11. The Court cites the amount it asserts in the Motion in the balance of this opinion.

identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, which it believes demonstrates the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotations omitted).

After the moving party has carried its initial burden of showing that there are no genuine issues of material fact in dispute, the burden shifts to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). "Inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion." *Id.* at 587 (internal quotations and citations omitted). However, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Id.* at 586. The non-moving party must present specific facts that demonstrate there is a genuine issue of material fact for trial. *Id.* at 587. "The 'mere possibility' of a factual dispute is not enough." *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 582 (6th Cir. 1986).

"Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "A genuine issue for trial exists 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Muncie Power Producers, Inc. v. United Techs. Auto., Inc.*, 328 F.3d 870, 873 (6th Cir. 2003) (quoting *Anderson*, 477 U.S. at 248). Thus, for a party to avoid summary judgment, "there must be evidence on which a jury could reasonably find for [that party]." *Anderson*, 477 U.S. at 252. Accordingly, in determining whether summary judgment is warranted, a court generally asks "whether there is evidence upon which a jury can properly proceed to find a verdict for the party producing it, upon whom the *onus* of proof is imposed." *Id.* (citation omitted).

### III. Analysis

5

**A. The parties agree that Ohio law and California law are the same in material respects and that either can govern this case**

Because this case is before the Court pursuant to diversity jurisdiction, 28 U.S.C. § 1332, state law governs the claims in the Complaint. *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78-80 (1938). The parties do not discuss whether Ohio law, California law, or some other state law applies. In its brief, Hartford states that its reading of the policy is supported "[u]nder well-settled California law," without further explanation or analysis. Doc. 30, pp. 10-11. In its opposition brief, Wayne-Dalton states, "While the Policies were issued to Wayne-Dalton in Ohio, it does not matter whether Ohio or California law applies" because "[t]he two states are similar on key principles of law." Doc. 34, p. 7. In its reply brief, Hartford agrees, as it cites to and relies upon both Ohio and California legal authority. Doc. 35, pp. 7-8, 9.

A court may "rely on the litigants' agreement about the governing law (or, more often, on one litigant's failure to dispute the issue) to avoid deciding what could be knotty choice-of-law questions." *Masco Corp. v. Wojcik*, 795 F. App'x 424, 427 (6th Cir. 2019); *GBJ Corp. v. E. Ohio Paving Co.*, 139 F.3d 1080, 1085 (6th Cir. 1998). Accordingly, this Court relies on the parties' agreement that the law in both states is similar in material respects. Indeed, the Court finds that the outcome of this case is the same whether Ohio law or California law applies.

The parties agree that, in insurance contract litigation under Ohio and California law, a court looks to the plain language of the insurance policy as a whole, including any endorsements, and that any ambiguity is ultimately construed against the drafter/insurer. *See, e.g., Westfield Ins. Co. v. Galatis*, 797 N.E.2d 1256, 1261–1262 (Ohio 2003); *Pardee Const. Co. v. Ins. Co. of the West*, 92 Cal. Rptr. 2d 443, 450-451 (Cal. Ct. App. 2000), *as modified on denial of reh'g* (Feb. 23, 2000). The Court applies these legal principles in the analysis that follows.

**B. The relevant portions of the CGL and DLI relied upon by the parties**

Both parties rely upon the express language of the policy to support their contrary positions. Specifically, they rely upon the definitions contained in the CGL and two key provisions set forth in the DLI. The relevant definitions in the CGL are as follows:

> 6. "Claim" means a demand received by any insured for damages alleging injury or damage to persons or property including the institution of a "suit" for such damages against any insured.
>
> 7. "Claim expenses" means all expenses [incurred by us by or on behalf of an insured.]
>
> But "claim expenses" include only those expenses incurred in the investigation or defense of "claims" or "suits."
> ….
> "Claim expenses" are not damages.
>
> ***
>
> 23. "Property damage" means:
> a.    Physical injury to tangible property, including all resulting loss of use of that property….; or
> b.    Loss of use of tangible property that is not physically injured….
>
> ***
>
> 25. "Suit" means a civil proceeding in which damages because of "bodily injury," "property damage," "personal injury" or "advertising injury" to which this policy applied are alleged.
>
> "Suit" includes:
> a.    An arbitration proceeding in which such damages are claimed and to which you must submit or do submit with our consent; or
> b.    Any other alternative dispute resolution proceeding in which damages are claimed and to which you submit with our consent.

Doc. 30-3, pp. 15, 16, 18, 19. The parties do not dispute that "claim expenses" includes litigation defense costs.

The DLI sets forth a $500,000 per occurrence deductible. Doc. 1-2, p. 2. The two key provisions relied upon by the parties state:

> 1. Subject to the Limits of Liability and all other terms and conditions of this policy, our obligations to pay damages and "claims expenses" on your behalf applies only to the amount of damages and "claims expenses" in excess of any deductible amounts set forth in the Schedule ….
>
> ***

7

> 4. We may pay any part or all of the deductible amount to effect settlement of any "claim" or "suit" and, upon notification of the action taken, you shall promptly reimburse us for such part of the deductible amount as has been paid by us.

Doc. 1-2, pp. 2-3.

Hartford argues that, based on DLI section (1), supra, the $500,000 per occurrence deductible expressly applies to both claims and claim expenses. And, because Harford entered into a settlement with Travelers whereby it contributed to defense costs that Travelers incurred defending the contractors/developers in the California litigation, under DLI section (4), supra, Wayne-Dalton is expressly obligated to reimburse Hartford for the $245,000.

Wayne-Dalton disagrees. Relying on DLI section (4), it argues that Hartford did not pay Travelers to settle a "claim" or "suit" as those terms are defined under the CGL. Doc. 34, pp. 4, 8. It points out that those terms are defined as referring to "property damage" and asserts that Hartford paid Travelers for defense costs, not property damage.[6] Wayne-Dalton also submits that Hartford did not settle a claim or suit against an insured, but a claim against itself. Doc. 34, p. 8. Finally, it asserts that Hartford has not shown that it was required or permitted to defend the contractors/developers in the California litigation; thus, Hartford has no right to reimbursement from Wayne-Dalton. Doc. 34, p. 10.

In reply, Hartford maintains that the plain language of the CGL and DLI entitled Hartford to settle with Travelers for claim expenses and to seek reimbursement from Wayne-Dalton. Doc. 35, pp. 3-6. It maintains that the fact that it initially declined to participate in the defense of the contractors/developers does not change its right to seek reimbursement from Wayne-Dalton. Doc. 35, p. 5.

### C. Hartford is not entitled to reimbursement from Wayne-Dalton

---

[6] Wayne-Dalton also asserts that Hartford did not pay for "advertising injury," "bodily injury," or "personal injury." Doc. 34, p. 8. Hartford agrees; it states that it paid for "property damage." Doc. 35, p. 5.

8

Essentially, the parties do not disagree about what the policy language means.  Rather, they disagree about the nature of the reimbursement Hartford seeks, and how that changes, or does not change, Wayne-Dalton's obligations under the language in the policy.

Wayne-Dalton's view is that Hartford seeks reimbursement for a settlement with Travelers, and that, under the policy, it is not obligated to reimburse Hartford for that settlement expenditure.  Hartford's view is that, regardless of when or to whom it paid the $245,000, that money represents claim expenses accrued in defense of the contractors/developers in the California litigation.  And that is an expenditure the policy expressly provides for and for which Wayne-Dalton must reimburse it.

Wayne-Dalton's view is more accurate.  Hartford's settlement with Travelers was not a settlement of a "claim" or "suit" as those terms are defined in the CGL.  The DLI, section (4), provides that Hartford can seek reimbursement from Wayne-Dalton for an amount it paid "to effect settlement of any 'claim' or 'suit.'"  Doc. 30-3, p. 22.  The CGL defines a "claim" as "a demand received by any insured for damages … including the institution of a 'suit' for such damages against any insured."  Doc. 30-3, p. 15.  "Suit" is defined as "a civil proceeding in which damages…to which the policy applies are alleged."  Doc. 30-3, p. 19.  The defining feature of both terms is that they involve damages.  Conversely, the CGL defines "claim expenses" as expenses incurred "in the investigation or defense of 'claims' or 'suits'" and states, "'Claim expenses' are not damages."  Doc. 30-3, p. 16.  Because claim expenses are not damages, they cannot be a "claim" or a "suit" as these terms are defined in the CGL or as those term are referenced in the DLI.  Therefore, nether the CGL nor the DLI entitles Hartford to reimbursement from Wayne-Dalton for its $245,000 settlement with Travelers.

The legal authority Hartford cites in support of its position is not on point.  Doc. 30, p. 11.  In *Am. W. Door & Trim v. Arch Specialty Ins. Co*., 2015 WL 1266787 (C.D. Cal. Mar. 18,

9

2015), the court discussed whether the insurance policy language permitted the insurer to settle lawsuits filed against the insured without the insured's permission and determined that the policy language did permit the insurer to settle such lawsuits without the insured's consent. Similarly, in *New Plumbing Contractors, Inc. v. Edwards, Sooy & Byron*, 121 Cal.Rptr.2d 472, 473 (Cal. Ct. App. June 25, 2002), the plaintiff, a plumbing subcontractor, challenged its insurer's right to settle lawsuits filed against the general contractor, also an insured under the policy, for construction defects without the plaintiff's consent. The court found that the insurance policy expressly provided that the insurer had full discretion to settle without the insured's permission. *Id*. at 474. In both cases, the insurance company was acting within the purview of the express policy language by settling lawsuits that had been filed against an insured. Here, Hartford did not settle a lawsuit filed against an insured.

Finally, even if the CGL and DLI language could be said to be ambiguous, the Court construes the language of the insurance contract against the drafter/insurer, Hartford. *Westfield Ins. Co.*, 797 N.E.2d at 1261–1262; *Pardee Const. Co.*, 92 Cal. Rptr. 2d at 450-451. Although the parties do not state that Hartford was the drafter, the CGL and DLI indicate that Hartford was the drafter. See Doc. 30-3, p. 3; Doc. 1-2, p. 4 (CGL and DLI containing a Hartford copyright mark).

As explained above, Hartford is not entitled to summary judgment on this claim. Furthermore, as the outcome hinges on the express policy language and that policy language favors Wayne-Dalton, the Court hereby provides notice that, within ten day of the date of this order, it intends to enter judgment in favor of Wayne-Dalton on this claim. *See* Fed. R. Civ. P. 56(f)(1) ("After giving notice and a reasonable time to respond, the court may… grant summary judgment for a nonmovant"); *Yashon v. Gregory*, 737 F.2d 547, 552 (6th Cir. 1984) ("The clearly established rule in this circuit is that a district court must afford the party against whom

*sua sponte* summary judgment is to be entered ten-days notice and an adequate opportunity to respond."); *Meyer v. AmerisourceBergen Drug Corp.*, 264 Fed App'x 470, 478-479 (6th Cir. 2008) (summary judgment was properly entered by district court in favor of non-moving party when no genuine issue of material fact existed, the disposition of the case hinged on the contract language, and the issue had been fully briefed).

### D. Hartford does not show it is entitled to recover $9,239 in other losses

Hartford also submits that it is entitled to summary judgment on its claim that Wayne-Dalton owes it $9,239 in losses unrelated to the settlement with Travelers.  Doc. 30, pp. 11-12.  Wayne-Dalton argues that Hartford is not entitled to recover that amount because it did not include any allegations in the Complaint regarding the $9,239 and it provides no detail as what this amount is for or why it has a legal right to recover it.  Doc. 34, p. 3.  The Court finds that Hartford has not met its initial burden on its motion for summary judgment to show that Wayne-Dalton owes it $9,239.

In its Complaint, Hartford states, "in 2017, The Hartford paid an additional loss reimbursement of $1,554.25."  Doc. 1, p. 3, ¶11.  In its Motion, it has recalculated that amount to $9,239.  Doc. 30, p. 11.  In support of its asserted right to recover that amount, Hartford relies on the declaration of Cynthia Finley, its Operations Director for Risk Management and Financial Services.  Doc. 35, p. 8; Doc. 32.  Finley's declaration states, "The Hartford also included a claim to recover the sum of $9,239.00 for the unpaid amounts invoiced to Wayne-Dalton in connection with other claims unrelated to the California construction litigation and the Travelers settlement."  Doc. 32, p. 5, ¶12.  Attached to the declaration are 19 pages of line item invoicing.  Doc. 32-1.  The list includes various amounts, some dated as far back as 1995.  E.g., Doc. 32-1, p. 9.  There is no identification of the relevant items purportedly totaling $9,239 and no explanation as to why these losses are covered under the policy and owed by Wayne-Dalton.

11

Although Hartford states that it also attached invoices totally $9,239 to the Complaint (Doc. 35, p. 8), the invoices attached to the Complaint, which are different from the invoices attached to Finley's declaration, do not show that Wayne-Dalton owes Hartford $9,239, or any amount. Indeed, at the time it filed its Complaint, Hartford itself was apparently confused about the amount it believed Wayne-Dalton purportedly owed, asserting it owed $1,554.25.

In its reply brief, Hartford contends that Wayne-Dalton does not dispute that the invoices were issued, received, and remain unpaid. Thus, Hartford, asserts, Wayne-Dalton has not met its burden to show that there is a genuine issue of material fact that it owes Hartford $9,239. Doc. 35, pp. 8-9. However, it is Hartford who has the initial burden to show it is entitled to summary judgment, and it has not met that initial burden because it has not provided any evidence showing that Wayne-Dalton owes $9,239 for losses under the CGL and DLI. *Celotex Corp.*, 477 U.S. at 325; *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 160 (1970) (if the movant fails to satisfy its burden on summary judgment, the non-movant is "not required to come forward" with opposing evidence, citing a Fed.R.Civ.P. 56(e) Advisory Committee comment); *Alexander v. F.B.I.*, 691 F.Supp.2d 182, 193 (D.D.C. 2010). Accordingly, Hartford is not entitled to summary judgment on its claim to recover $9,239. A genuine issue of material fact exists as to this claim, and, therefore, it is a matter for a jury to determine.

## IV. Conclusion

For the reasons explained above, Hartford's motion for summary judgment (Doc. 30) is DENIED.  Wayne-Dalton is entitled to an entry of judgment in its favor on Hartford's claim that it owes $245,000.  Accordingly, within ten days of the date of this Order, the Court will enter judgment in favor of Wayne-Dalton on this claim.  With respect to Hartford's claim that Wayne-Dalton owes $9,239 in other, unidentified losses, a genuine issue of material fact exists, precluding summary judgment to either party.  Therefore, this case will proceed to trial on Hartford's claim that Wayne-Dalton owes $9,239.

IT IS SO ORDERED.

Dated:  June 16, 2020

*/s/ Kathleen B. Burke*
Kathleen B. Burke
United States Magistrate Judge